UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSON HEWITT TAX SERVICE INC. and JACKSON HEWITT INC., <br><br> Plaintiffs, <br><br> v. <br><br> GALEN D. KIRKLAND, in his official capacity as Commissioner of the New York State Division of Human Rights, <br><br> Defendant. | Civil Action No.: 08-8863 |

## DECLARATION OF DOUGLAS K. FOSTER

I, Douglas K. Foster, hereby declare as follows, based on my own personal knowledge:

1.  I submit this declaration in support of the Motion for a Preliminary Injunction by Jackson Hewitt Tax Service Inc. and Jackson Hewitt Inc. (collectively "Jackson Hewitt") against Galen D. Kirkland, in his official capacity as the Commissioner of the New York State Division of Human Rights ("the Division"), filed this day before the United States District Court for the Southern District of New York.

2.  I am Senior Vice President, Chief Marketing Officer for Jackson Hewitt Tax Service, Inc. I have been in this position since November 2007. I am familiar with the facts stated herein, and if called upon to testify, I could and would testify competently to facts hereinafter set forth.

1

3.         Jackson Hewitt prepares federal, state and local individual income tax returns in the United States through a nationwide network of company-owned tax offices and independently owned and operated franchises under the brand name Jackson Hewitt Tax Service®. Jackson Hewitt's network consists of approximately 6,800 franchise and company-owned offices. Jackson Hewitt is the second largest tax preparation firm in the United States.

4.         Jackson Hewitt's company-owned or franchisee offices can be found in more than 330 locations throughout New York State, ranging from East Hampton and Bridgehampton (in the far eastern end of the state), to Ogdensburg (in the far northern end of the state), to Niagara Falls and Buffalo (in the far western end of the state), and to the length of New York's southern borders in places like Elmira, Binghamton, Monticello and the five boroughs of New York City, and at all points in between. Jackson Hewitt has locations in both large cities and in small towns, including many with low minority populations such as Hamburg (approximately 1.4% minority population according to U.S. Census figures), Cortland (approximately 4.3% minority population), and Horseheads (4.4% minority population).

5.         Jackson Hewitt does not discriminate against anyone on the basis of race or military status. RALs are offered to customers on the same terms and conditions, regardless of race or military status.

6.         National banks contract with Jackson Hewitt in order to offer refund anticipation loans ("RALs") to customers in Jackson Hewitt's company-owned offices and franchisee offices across the country, including in New York. With respect to New

York, Jackson Hewitt has contracted with Santa Barbara Bank & Trust ("SBB&T"). SBB&T is one of the trade names under which Pacific Capital Bank, N.A. ("Pacific"), a national bank based in California, does business. Pacific is regulated by the Office of the Comptroller of the Currency (the "OCC"), the federal agency charged with regulating national banks under the National Bank Act. In the upcoming tax season, Jackson Hewitt will facilitate the refund anticipation loans of Pacific in New York.

7. Jackson Hewitt's contract with Pacific requires Jackson Hewitt to conduct advertising in support of RALs, provide marketing personnel, and devote resources to promoting the availability of RALs. Under that contract, Pacific retains the right to review, and does in fact, review any marketing materials created by Jackson Hewitt before any such advertisements are disseminated to the general public.

8. RALs are available to all customers who may qualify for a RAL, regardless of race, on the same terms and conditions in every Jackson Hewitt office throughout the state of New York.

9. Pacific, in its sole discretion, determines whether to issue a loan based upon the customer's tax refund information. Jackson Hewitt takes no part in the substantive decisions involved in the underwriting process and does not participate in the profit or loss in connection with such bank lending.

10. Pacific sets the terms and conditions of refund anticipation loans, including interest rates, fees and charges. All customers, regardless of race, are charged the same rates.

11. RALs are important products for Jackson Hewitt's business. Availability

of financial products, including RALs, is an important factor for some customers in making their decision about whether to do business with Jackson Hewitt. In 2008, 67% of Jackson Hewitt's customers earned less than $30,000. Moreover, a substantial portion of Jackson Hewitt's customers file during the earliest part of the tax season (January and February) and typically seek to have their returns prepared as soon as they receive their W-2 forms. In 2008, by the end of February (halfway through the tax season), Jackson Hewitt had prepared 73% of the tax returns that its network would prepare for the entire tax year.

12.	Jackson Hewitt's tax preparation services are also dependent on RALs in another fundamental way: many customers use the RAL proceeds to pay for Jackson Hewitt's tax preparation services.

13.	In Jackson Hewitt's experience, in those periods when it was not able to offer a full range of financial products, Jackson Hewitt's sales figures have suffered. In the first part of the tax season in 2008, Jackson Hewitt was not able to offer the full range of financial products that it had offered in earlier seasons. As a result of this more limited offering of financial products, the number of *tax returns* prepared by Jackson Hewitt dropped substantially. In particular, for the first month of 2008, the number of tax returns prepared by Jackson Hewitt decreased by approximately 300,000 from the previous year.

14.	To the extent that the Division obtained an injunction prohibiting Jackson Hewitt from facilitating RALs to certain people in certain neighborhoods, Jackson Hewitt's business would be substantially injured and its goodwill would be substantially damaged.

15.     It is important for Jackson Hewitt to win the loyalty of its customers. If Jackson Hewitt has to turn customers away or was not able to meet the customers' demand for financial products, Jackson Hewitt's business will be injured over that tax season and in the tax seasons to come. It is impossible to estimate the extent to which the business would be damaged.

16.     Given the lead time required to develop and implement the plan to market Pacific's RALs, a decision by the Division requiring Jackson Hewitt to alter the way that it markets RALs would cause a substantial disruption and could result in Jackson Hewitt being unable to develop and implement a new plan in time for the 2009 tax season.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of October 2008.

_____
Douglas K. Foster