UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PACIFIC CAPITAL BANK, N.A., d/b/a SANTA
BARBARA BANK & TRUST,

                              Plaintiff,

        v.                                              08-CV-8760 (JGK)(DCF)

GALEN D. KIRKLAND in his official capacity as
Commissioner of the New York State Division of
Human Rights,

                              Defendant.

JACKSON HEWITT TAX SERVICE INC. and
JACKSON HEWITT INC.,

                              Plaintiffs,

        v.                                              08-CV-8863
                                                        (JGK)(DCF)

GALEN D. KIRKLAND in his official capacity as
Commissioner of the New York State Division of
Human Rights,

                              Defendant.

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

        Pursuant to Local Rule 56.1 for the United States District Court for the Southern District

of New York, Plaintiffs Jackson Hewitt Tax Service Inc. and Jackson Hewitt Inc. ("Jackson

Hewitt") submit the following Statement of Material Facts in Support of Jackson Hewitt's

Motion for Summary Judgment.

        1.      Jackson Hewitt is the second largest tax preparation firm in the United

States.  Jackson Hewitt prepares federal, state and local individual income tax returns in the

United States through a nationwide network of company-owned tax offices and independently

owned and operated franchises under the brand name Jackson Hewitt Tax Service®.

(Declaration of Robert Moore, dated October 5, 2009 ("Moore Decl.") ¶ 3.)

      2.      Jackson Hewitt's network consists of approximately 6,800 franchise and

company-owned offices. (*Id.*)

      3.      Jackson Hewitt's company-owned or franchisee offices can be found in

more than 330 locations throughout New York State, ranging from East Hampton and

Bridgehampton (in the far eastern end of the state), to Ogdensburg (in the far northern end of the

state), to Niagara Falls and Buffalo (in the far western end of the state), and to the length of New

York's southern borders in places like Elmira, Binghamton, Monticello and the five boroughs of

New York City, and at all points in between. (*Id.* ¶ 4.)

      4.      Jackson Hewitt has locations in both large cities and in small towns,

including many with low minority populations such as Hamburg (approximately 1.4% minority

population according to U.S. Census figures), Cortland (approximately 4.3% minority

population), and Horseheads (4.4% minority population). (*Id.*)

      5.      Jackson Hewitt does not discriminate against anyone on the basis of race

or military status. (*Id.* ¶ 5.)

      6.      National banks contract with Jackson Hewitt in order to offer refund

anticipation loans ("RALs") to customers in Jackson Hewitt's company-owned offices and

franchisee offices across the country, including in New York. A RAL is a loan secured by a

customer's anticipated federal tax refund. (*Id.* ¶ 6.)

      7.      With respect to New York, Jackson Hewitt has contracted with Santa

Barbara Bank & Trust ("SBB&T") to offer RALs. (Id. ¶ 8.) SBB&T is one of the trade names

under which Pacific Capital Bank, N.A. ("Pacific"), a national bank based in California, does business.  (*Id.*)

8.      Pacific is regulated by the Office of the Comptroller of the Currency (the "OCC"), the federal agency charged with regulating national banks under the National Bank Act of 1864, 12 U.S.C. § 21 et seq. ("NBA").  (*Id.* ¶ 9.)

9.      In the upcoming 2009 tax season, Jackson Hewitt will facilitate the refund anticipation loans of Pacific in New York.  (*Id.* ¶ 10.)

10.      Jackson Hewitt's contract with Pacific requires Jackson Hewitt to conduct advertising in support of RALs, provide marketing personnel, and devote resources to promoting the availability of RALs.  Under that contract, Pacific retains the right to review, and does in fact, review any marketing materials created by Jackson Hewitt before any such advertisements are disseminated to the general public.  (*Id.* ¶ 11.)

11.      RALs are one-time loans offered by national banks and other lenders based on several criteria, including the customer's anticipated income tax refund.  (*Id.* ¶ 12.)

12.      The proceeds of a RAL can be available to a customer as soon as one day after the customer's tax return is prepared.  Because a RAL is a loan and represents a risk to the banks, the banks charge fees to the RAL customers.  (*Id.*)

13.      RALs are available to all customers who may qualify for a RAL, regardless of race or military status, on the same terms and conditions in every Jackson Hewitt office throughout the state of New York.  (*Id.* ¶ 13.)

14.      Pacific sets the terms and conditions of RALs, including interest rates, fees and charges.  All customers, regardless of race or military status, are charged the same rates. (*Id.*)

15.     National banks offer RALs during the tax filing season of January through April of each year.  (*Id.* ¶ 14.)

16.     After a customer's tax return has been prepared through Jackson Hewitt's tax return preparation software, an eligible customer can choose whether or not to purchase a RAL or other financial product from a national bank.  (*Id.*)  A customer who desires to purchase a RAL will apply for the RAL with the national bank.  (*Id.*)

17.     Jackson Hewitt transmits the customer's RAL application to the national bank after the amount of the customer's tax refund is determined.  (Id. ¶ 15.)  Jackson Hewitt also performs other important functions for the bank.  (*Id.*)  For example, Jackson Hewitt obtains a debt indicator for the taxpayer that indicates whether the taxpayer owes any debt to the IRS.  (*Id.*)  If a taxpayer owes debt to the IRS, the taxpayer is ineligible for a RAL under the banks' lending guidelines.  (*Id.*)

18.     Pacific, in its sole discretion, determines whether to issue a loan based upon the customer's tax refund information.  (*Id.* ¶ 16.)

19.     Jackson Hewitt takes no part in the substantive decisions involved in the RAL underwriting process and does not participate in the profit or loss in connection with such bank lending.  (*Id.*)

20.     RALs are important products for Jackson Hewitt's business.  (*Id.* ¶ 17.) Availability of financial products, including RALs, is an important factor for some customers in making their decision about whether to do business with Jackson Hewitt.  (*Id.*)  In 2008, 67% of Jackson Hewitt's customers earned less than $30,000.  (*Id.*)  Moreover, a substantial portion of Jackson Hewitt's customers file during the earliest part of the tax season (January and February) and typically seek to have their returns prepared as soon as they receive their W-2 forms.  (*Id.*)

In 2008, by the end of February (halfway through the tax season), Jackson Hewitt had prepared 73% of the tax returns that its network would prepare for the entire tax year. (*Id.*)

21.     Jackson Hewitt's tax preparation services are also dependent on RALs in another fundamental way:  many customers use the RAL proceeds to pay for Jackson Hewitt's tax preparation services. (*Id.* ¶ 18.)

22.     In Jackson Hewitt's experience, in those periods when it was not able to offer a full range of financial products, Jackson Hewitt's sales figures have suffered. (*Id.* ¶ 20.) In the first part of the tax season in 2008, Jackson Hewitt was not able to offer the full range of financial products that it had offered in earlier seasons. (*Id.*)

23.     As a result of this more limited offering of financial products, the number of *tax returns* prepared by Jackson Hewitt dropped substantially. (*Id.*)  In particular, for the first month of 2008, the number of tax returns prepared by Jackson Hewitt decreased by approximately 300,000 from the previous year. (*Id.*)

24.     Should the Division obtain an injunction prohibiting Jackson Hewitt from facilitating RALs to certain people in certain neighborhoods, Jackson Hewitt's business would be substantially injured and its goodwill would be substantially damaged. (*Id.* ¶ 21.)

25.     It is important for Jackson Hewitt to win the loyalty of its customers. (*Id.* ¶ 22).  If Jackson Hewitt has to turn customers away or was not able to meet the customers' demand for financial products, Jackson Hewitt's business will be injured over that tax season and in the tax seasons to come. (*Id.*)  It is impossible to estimate the extent to which the business would be damaged. (*Id.*)

26.     Given the lead time required to develop and implement the plan to market Pacific's RALs, a decision by the Division requiring Jackson Hewitt to alter the way that it

markets RALs would cause a substantial disruption and could result in Jackson Hewitt being

unable to develop and implement a new plan in time for the 2009 tax season. (*Id.* ¶ 23.)

27.     In a March 15, 2007 press release, the Division announced that it would

investigate tax preparation companies that allow RALs to be offered to their customers,

including the three major tax preparation companies: H&R Block, Jackson Hewitt, and Liberty

Tax Service. (Declaration of Benjamin B. Klubes, dated October 5, 2009 ("Klubes Decl.") Ex.

1.)

28.     The Division stated that it "had reason to believe that major companies,

such as H&R Block, Jackson Hewitt and Liberty Tax Service, target low-income individuals,

primarily in communities of color, and military families for these loans." (*Id.*)

29.     The Division's press release referred to RALs as "high interest loans" and

"outrageous." (*Id.*)

30.     Then-Commissioner Kumiki Gibson advised New Yorkers that they

"should be aware that numerous community groups exist to assist with tax preparation and

obtaining quick refunds from the IRS at little or no cost." (*Id.*)

31.     On March 16, 2007, the Division sent a letter to Jackson Hewitt, advising

that the Division had begun investigating Jackson Hewitt and other tax preparers with respect to

the sale of RALs, and requesting certain documents from Jackson Hewitt. (Klubes Decl. Ex. 2.)

32.     On or about April 9, 2007, Jackson Hewitt received a subpoena from the

Division. (Klubes Decl. Ex. 3.)

33.     The subpoena commanded the production of a range of documents

regarding financial products and the advertising and marketing of financial products sold by

national banks. (*Id.*)

34.     On January 17, 2008, the Division filed nearly identical complaints against Jackson Hewitt and Liberty Tax Service, alleging, among other things, that these tax preparation companies violated New York's Human Rights Law "by marketing to, targeting, and selling abusive, high-interest loan products to individuals based on their race and military status." (Klubes Decl. Ex. 4 at p. 1, Ex. 5 at p. 1.)

35.     The Division's complaints criticized RALs as including "exorbitant fees and costs" and accused RALs of "stripping New Yorkers of millions of dollars each year, even though tax payers can receive their refunds from the IRS, at no cost, usually within a week to ten days of filing." (Klubes Decl. Ex. 4 ¶ 3, Ex. 5 ¶ 3.)

36.     The Division argued that RALs "undermine vital tax credits designed by Congress to support families and the working poor." (Klubes Decl. Ex. 4 ¶ 5, Ex. 5 ¶ 5.)

37.     To support its allegation that Jackson Hewitt "targets" RALs to individuals in the military, the Division relied on the fact that Jackson Hewitt sponsors a NASCAR team called the "#16 National Guard Fusion" and sponsors a "National Guard Heroes of the Year" award in connection with its NASCAR promotion. (Klubes Decl. Ex. 4 ¶ 23.)

38.     The Division requested an order that Jackson Hewitt "cease and desist immediately in the engaging of the unlawful conduct described above" and to "comply fully with the provisions of the Human Rights Law in the marketing and sale of its products." (*Id.* at p. 7.)

39.     On January 17, 2008, the Division also issued a press release, calling the alleged marketing of RALs "particularly egregious in light of the fact that tax refunds are available directly from the IRS at no cost, usually within two weeks of filing, and many organizations will assist taxpayers with the process free of charge." (Klubes Decl. Ex. 6.)

40.     The Division also criticized RALs as involving "exorbitant fees and interest rates" and suggested that military personnel receiving RALs were being "targeted and victimized." (*Id.*)

41.     On January 18, 2008, the day after the filing of the Division's Complaint, and before an adjudication of the merits of the Division's Complaint, Commissioner Gibson – who was the final decision maker in adjudicative proceedings under Division regulations – was quoted in the <u>New York Times</u> as saying that "the most egregious thing is that [Jackson Hewitt and other tax preparation businesses] target the most vulnerable people in the community . . . . They are targeted specifically for these products [RALs and other financial products sold by national banks] because of their status as people of color, people in the military." (Klubes Decl. Ex. 7.)

42.     Approximately two weeks later, on February 3, 2008, the Commissioner was quoted in the <u>New York Daily News</u> as stating, "This is a predatory lending practice, plain and simple. [Jackson Hewitt and other tax preparers] go out of their way to rope in people of color and members of the military." (Klubes Decl. Ex. 8.)

43.     The article asserted that Commissioner Gibson "vowed upon taking office last year" that she "declared war on *predatory lenders*." (*Id.*) (Emphasis added.)

44.     The article posited that the cases against Jackson Hewitt and Liberty Tax Service were Gibson's "first shot" in her "war" and that "Gibson's lawsuits could lead to wholesale reform of the lucrative tax-loan business…" (*Id.*)

45.     In their statement, Commissioner Gibson and the Division referred to RALs as the tax preparers' loan products, as opposed to loans made by Pacific or other national banks. (*Id.*)

46.    On March 19, 2008, the Division announced in a press release that the New York Supreme Court had ordered H&R Block to comply with the subpoenas the Division had previously issued. (Klubes Decl. Ex. 9.)

47.    The Division's press release also states:

The Division has maintained that these products are not only abusive and predatory, but completely unnecessary. For instance, taxpayers can file on-line directly with the IRS and receive their refunds in approximately ten days. In addition, there are tax assistance centers around the state which will assist taxpayers for free. For a list of locations for these services, visit the Division's website at www.dhr.state.ny.us. (*Id.*)

48.    On or about June 30, 2008, Mr. William Lamot, acting on behalf of the Division, signed a document entitled "Determination after Investigation," asserting that the Division had jurisdiction and that the Division had probable cause to believe that violations of the Human Rights Law existed. (Klubes Decl. Ex. 10.)

49.    With respect to preemption, the Division represented that it had obtained the opinion of its General Counsel, who believed that the NBA did not preempt the Division's proceedings against Jackson Hewitt. (*Id.*)

50.    The General Counsel's opinion was based primarily on the fact that Jackson Hewitt was not a national bank or operating subsidiary. (*Id.*)

51.    If Pacific could not make RALs available to customers at tax preparation firms, Pacific's ability to extend RALs to customers in New York State would be substantially diminished. (Declaration of Richard H. Turner ¶ 22, Doc. No. 33 (accompanying Pacific's Memorandum of Law in Support of Summary Judgment, Doc. No. 35.))

52.    If the Division is successful in limiting, conditioning or blocking tax preparers from facilitating RALs, Jackson Hewitt will lose a substantial amount of money in New York RAL revenues for the upcoming tax season alone. (Moore Decl. ¶¶ 20-23.).

Dated: October 5, 2009          Respectfully submitted,

Benjamin B. Klubes
BUCKLEYSANDLER LLP
1250 24th Street N.W.
Suite 700
Washington, D.C. 20037
 (202) 349-8000

Richard Brusca
Michael P. Kelly
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
1440 New York Avenue, NW
Washington, DC 20005
Tel: (202) 371-7000

Scott D. Musoff
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
4 Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Plaintiffs Jackson Hewitt Tax Service
Inc. and Jackson Hewitt Inc.*