UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

JACKSON HEWITT TAX SERVICE INC.,
ET AL.,

                **Plaintiffs,**

      - against -

GALEN D. KIRKLAND, Commissioner of the
New York State Division of Human
Rights,

                **Defendant.**[1]
────────────────────────────────────

               08 Civ. 8863 (JGK)

               <u>OPINION AND ORDER</u>

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Jackson Hewitt Tax Service Inc. and Jackson
Hewitt Inc. (collectively, "Jackson Hewitt"), brought this
action against the defendant, Galen D. Kirkland, in his official
capacity as the Commissioner of the New York State Division of
Human Rights (the "Division"). Jackson Hewitt seeks a
declaratory judgment pursuant to 28 U.S.C. § 2201 that the New
York State Human Rights Law, N.Y. Exec. Law Art. 15, is
preempted by the National Bank Act of 1864, 12 U.S.C. § 21 <u>et
seq.</u>, with respect to the Division's administrative proceeding
against Jackson Hewitt regarding its marketing of tax refund
anticipation loans ("RALs"). Jackson Hewitt also seeks a
preliminary and permanent injunction enjoining the Division from
continuing its administrative proceeding against Jackson Hewitt.

───────────────

[1] The Clerk is directed to amend the caption in this case to read as it
is provided in this Order.  The caption originally transposed the defendant's
first and last names.

The Division moves to dismiss Jackson Hewitt's complaint pursuant to Federal Rule of Civil Procedure 12(b) on the ground that <u>Younger v. Harris</u>, 401 U.S. 37 (1971), prohibits this Court from enjoining the Division's ongoing administrative proceeding. The Division also moves to dismiss the complaint pursuant to Rule 12(b)(6) on the ground that any enforcement action by the Division against Jackson Hewitt is not preempted by the National Bank Act.  Jackson Hewitt, in turn, moves for summary judgment pursuant to Rule 56 on the grounds that the National Bank Act preempts the Division's administrative action and that an injunction is necessary to prevent irreparable harm to Jackson Hewitt.

I

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007); <u>Arista Records LLC v. Lime Group LLC</u>, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the

plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.; see also SEC v. Rorech, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Rorech, 673 F. Supp. 2d at 221.


II

The following facts are undisputed, unless otherwise indicated.

3

The Division of Human Rights is a New York State agency tasked with enforcing the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law Art. 15.  The Division has the authority to file administrative complaints alleging violations of the NYSHRL and to initiate investigations, subpoena witnesses, and, after a finding of probable cause, direct respondents to answer complaints and appear at public hearings. N.Y. Exec. Law §§ 295, 297.2(a), 297.4(a).  The Division's hearings are conducted by hearing examiners or by Administrative Law Judges ("ALJs") who make final recommendations to the Commissioner of the Division.  Id. § 297.4(c); N.Y. Comp. Codes R. & Regs. tit. 9, § 465.12, 465.17(c).  The Commissioner's adjudication after a hearing is issued in an order that is enforceable by the Division, and appealable by the respondent, in New York State courts.  N.Y. Exec. Law § 298.

Jackson Hewitt provides income tax return preparation services and has a network of offices throughout the United States, including more than 330 offices in New York State. (Moore Decl. ¶¶ 3, 4.)  National banks, including Pacific Capital National Bank, N.A., d/b/a Santa Barbara Bank & Trust ("Pacific Capital"), have contracted with Jackson Hewitt to offer RALs to Jackson Hewitt's customers during income tax seasons.  (Moore Decl. ¶¶ 6, 13.)  A RAL is a short-term loan secured by an individual's anticipated income tax refund.

(Moore Decl. ¶ 6.)  Jackson Hewitt offers the RALs to customers after their tax returns are prepared in Jackson Hewitt's offices.  (Moore Decl. ¶ 14.)  If customers apply for the loans and are approved by the lending banks, the loan proceeds can be available to customers as soon as the next day.  (Moore Decl. ¶ 12.)  The national banks set the terms and conditions of the RALs.  (Moore Decl. ¶ 13.)

The Division alleges that RALs often include "exorbitant fees and costs," at annualized interest rates up to 700%, and that they "strip[] New Yorkers of millions of dollars each year, even though taxpayers can receive their refunds from the IRS, at no cost, usually within a week to ten days of filing."  (Sanders Decl. Ex. A-6, at ¶ 3.)

In a press release dated March 15, 2007, Kumiki Gibson, who was then the Commissioner of the Division, announced that the Division would investigate three tax preparation firms that offered RALs, including Jackson Hewitt, for targeting "low-income individuals, primarily in communities of color, and military families for these loans."  (Klubes Decl. Ex. 1.)  In a letter dated March 16, 2007, the Division informed Jackson Hewitt of its investigation and sought certain documents and information from Jackson Hewitt.  (Sanders Decl. Ex. A-4.)  The Division issued an administrative subpoena to Jackson Hewitt dated April 9, 2007, demanding the same information and

documents.  (Sanders Decl. Ex. A-5.)  In an administrative

complaint dated January 17, 2008, the Division charged Jackson

Hewitt with violating section 296 of the NYSHRL "by marketing

to, targeting, and selling abusive, high-interest loan products

to individuals based on their race and military status."

(Sanders Decl. Ex. A-6.)  The complaint alleged that Jackson

Hewitt's RAL marketing efforts, including its store placement,

billboards, television and radio advertisements, and sports

sponsorships, are "disproportionately target[ed]" at "Blacks and

Latinos and military families . . . in violation of the New York

State Human Rights Law § 296."  (Sanders Decl. Ex. A-6, at

¶ 27.)  The Division subsequently issued a Determination After

Investigation dated June 30, 2008, which stated that the

Division found sufficient probable cause to believe that Jackson

Hewitt had engaged in or was engaging in the unlawful

discriminatory practice alleged and recommended a public

hearing.  (Sanders Decl. Ex. A-12.)

     On October 14, 2008, Pacific Capital and Jackson Hewitt

separately filed lawsuits in this Court to enjoin the Division's

investigation of Jackson Hewitt.  The cases were consolidated;

however, Pacific Capital's case has now been voluntarily

dismissed pursuant to Federal Rule of Civil Procedure

41(a)(1)(A)(ii).  The Division now moves to dismiss Jackson

Hewitt's complaint and Jackson Hewitt moves for summary
judgment.

III

A

The Younger doctrine "generally requires federal courts to
abstain from taking jurisdiction over federal constitutional
claims that involve or call into question ongoing state
proceedings." Diamond "D" Constr. Corp. v. McGowan, 282 F.3d
191, 198 (2d Cir. 2002).  Although it was originally applied to
state criminal proceedings, Younger abstention "applies with
equal force to state administrative proceedings."  Id.  "Younger
abstention is required when three conditions are met: (1) there
is an ongoing state proceeding; (2) an important state interest
is implicated in that proceeding; and (3) the state proceeding
affords the federal plaintiff an adequate opportunity for
judicial review of the federal constitutional claims."  Id.
There are two generally recognized exceptions to the Younger
doctrine:  (1) where the state proceeding is motivated by bad
faith, a desire to harass, or is intended to retaliate for, or
to deter, constitutionally protected conduct and (2) where the
case involves such extraordinary circumstances that the
plaintiff will suffer irreparable injury even though the state
action was brought in good faith.  See Moore v. Sims, 442 U.S.

415, 432-33 (1979); Cullen v. Fliegner, 18 F.3d 96, 103-04 (2d
Cir. 1994).  The plaintiff bears the burden of establishing that
any exception to the Younger doctrine is appropriate.  Diamond
"D" Constr., 282 F.3d at 198.

In this case, there is no dispute that the requirements for
Younger abstention are satisfied.  Rather, Jackson Hewitt argues
that both of the exceptions apply.

To invoke the bad faith exception, "the party bringing the
state action must have no reasonable expectation of obtaining a
favorable outcome."  Id. at 199 (internal citation omitted).
The subjective motivation of the state authority in bringing the
proceeding at issue "is critical to, if not determinative of,"
whether the bad faith exception applies.  Id.  "A state
proceeding that is legitimate in its purposes, but
unconstitutional in its execution—even when the violations of
constitutional rights are egregious—will not warrant the
application of the bad faith exception."  Id.  Therefore, "the
federal plaintiff must show that the state proceeding was
initiated with and is animated by a retaliatory, harassing, or
other illegitimate motive."  Id.

As evidence of the Division's subjective bad faith, Jackson
Hewitt argues that the Division has prejudged the merits of its
administrative proceeding against Jackson Hewitt.  Jackson
Hewitt points to comments made in the press by the previous

Commissioner of the Division alleging that Jackson Hewitt has targeted minorities and members of the military for RALs. However, the previous Commissioner is no longer the Division's final decision-maker and Jackson Hewitt has made no allegation that the current Commissioner of the Division has prejudged the case or is otherwise biased against Jackson Hewitt.  There is no explanation of why an administrative hearing before an ALJ together with review and a final decision by the Commissioner and the opportunity to appeal the decision in state court is a process that is unfair to Jackson Hewitt.

Jackson Hewitt argues that the Division has no reasonable expectation of obtaining a favorable outcome in its administrative proceeding because it cannot point to a specific provision of the NYSHRL that Jackson Hewitt allegedly violated. Jackson Hewitt argues that while the Division cited section 296 of the NYSHRL in its original complaint, that section contains over forty-five prohibited discriminatory practices.  The Division amended its complaint to include a citation to section 296.2(a), which provides that

> [i]t shall be an unlawful discriminatory
> practice for any person, being the owner . .
> . of any place of public accommodation . . .
> because of the race, creed, color, national
> origin, sexual orientation, [or] military
> status . . . of any person . . . to refuse,
> withhold from or deny to such person any of
> the accommodations, advantages, facilities
> or privileges thereof, including the

> extension of credit, or, directly or
> indirectly, to publish, circulate, issue,
> display, post or mail any written or printed
> communication, notice or advertisement, to
> the effect that any of the accommodations,
> advantages, facilities and privileges of any
> such place shall be refused, withheld from
> or denied to any person on account of race,
> creed, color, national origin, sexual
> orientation, military status, sex, or
> disability or marital status, or that the
> patronage or custom thereat of any person of
> or purporting to be of any particular race,
> creed, color, national origin, sexual
> orientation, [or] military status . . . .

Jackson Hewitt argues that this section is inapplicable because

it is not accused of "deny[ing]" any of its services to anyone

because of their race or military status or making any

advertisement to that effect.

    In its probable cause determination, the Division found

that a tax preparation store is a "place of public

accommodation." (Sanders Decl. Ex. A-12, at 10-11.)  It also

found that evidence showed that Jackson Hewitt targeted "Blacks

and Latinos and military families for sales of its high cost

loan product," that its "stores were located more frequently and

in greater concentration in communities that had higher 'non-

white' populations or military bases," and that its "outdoor

marketing efforts were located more frequently and in greater

concentration in communities that had higher 'non-white'

populations or military bases."  (Id. at 10.) It found that

there was evidence—supporting a finding—that "these wealth

stripping loans are having a discriminatory impact on members of protected classes under the Human Rights Law." (Id.)  The Division argues that intentionally targeting persons in protected classes in order to sell them high-cost loans may establish intentional credit discrimination, and that, even without intent, a disparate impact on protected persons as a result of Jackson Hewitt's marketing would be actionable discrimination.  (Birnbaum Aff. ¶ 23.)

Whatever the applicability of section 296.2(a) or any of the other prohibitions in section 296, Jackson Hewitt has not shown that the Division's theory is so unreasonable as to suggest that its proceedings are in bad faith or are motivated by a desire to harass.  In any event, if Jackson Hewitt believes the Division's investigation and proceeding has no statutory basis, it can raise that argument in state court.  These are issues of state law which should be decided by the state courts. Jackson Hewitt has made no showing of why that remedy is not sufficient.

Jackson Hewitt also contends that the Division has no reasonable expectation of obtaining a favorable outcome because the National Bank Act preempts the application of the NYSHRL to Jackson Hewitt's RAL activities.  The National Bank Act prohibits any exercise of "visitorial powers" over national banks, except, among other things, "as authorized by Federal

law, [or] vested in the courts of justice." 12 U.S.C. § 484.
Congress has authorized the federal Office of the Comptroller of
Currency ("OCC") to regulate national banks. Id. § 93a.

The Supreme Court has recently clarified that "visitorial
powers" "do not include . . . ordinary enforcement of the law."
Cuomo v. Clearing House Ass'n, 129 S. Ct. 2710, 2715 (2009).
Rather, "visitorial powers" "refers to a sovereign's supervisory
powers over corporations." Id. at 2721. These powers include a
state's right to "inspect books and records at any time for any
or no reason," id. at 2719, and "general supervision and control
and oversight," id. at 2717 (internal quotation marks and
alteration omitted) (citing Watters v. Wachovia Bank, N.A., 550
U.S. 1, 8 (2007)). In Clearing House, the New York State
Attorney General sent letters to national banks requesting, "in
lieu of subpoena," that the banks provide certain information
about their lending practices in an effort to determine whether
the banks had violated New York's fair-lending laws. The
Supreme Court found that the threatened issuance of a subpoena
under the Attorney General's own authority fell within the scope
of "visitorial powers" prohibited by 12 U.S.C. § 484(a).
However, the Court was careful to note that the National Bank
Act would not prevent the Attorney General from bringing suit in
state court to enforce state laws: "[T]he power to enforce the

law exists separate and apart from the power of visitation."
Clearing House, 129 S. Ct. at 2720.

        While it is unnecessary to resolve the issue here, the
Division's administrative proceeding against Jackson Hewitt
appears to fall somewhere in between the visitorial subpoena
prohibited by Clearing House and a civil proceeding in state
court, which Clearing House specifically permits.  Jackson
Hewitt cannot argue that Clearing House so clearly prohibits the
Division's actions in this case as to suggest that the Division
is acting in bad faith by proceeding with its administrative
proceeding.

        Additionally, there is at least a question whether Jackson
Hewitt's RAL marketing activities are governed by the National
Bank Act in the first instance.  The Act applies to nationally
chartered banks and vests in them certain enumerated powers and
"all such incidental powers as shall be necessary to carry on
the business of banking."  12 U.S.C. § 24.  While the Supreme
Court has held that the National Bank Act's protections extend
to operating subsidiaries of national banks that exercise
national bank powers, Watters, 550 U.S. at 18, it is not clear
that the National Bank Act applies to Jackson Hewitt.  Jackson
Hewitt concedes that it is not the agent or operating subsidiary
of any national bank, but rather that it has entered into
specific contractual agreements with national banks to market

13

RALs.  Moreover, it does not appear that the Division's
proceeding against Jackson Hewitt prevents any national bank
from carrying out any of its banking functions.  Rather, the
Division seeks to prevent allegedly discriminatory advertising
by Jackson Hewitt, which advertising allegedly targets minority
populations for a loan program with particularly high rates.
Therefore, it cannot be said, as Jackson Hewitt urges, that the
Division has so "flagrantly disregarded" the National Bank Act
as to evince bad faith.  Moreover, it is clear that Jackson
Hewitt can raise all of its arguments with respect to preemption
in state court.

     Next, Jackson Hewitt argues that Younger abstention should
not apply because the Division's proceeding is motivated by a
desire to deter Jackson Hewitt from exercising its First
Amendment rights.  However, Jackson Hewitt has failed to offer
any evidence that demonstrates that the Division is motivated by
such a desire.  The existence of a First Amendment claim alone
does not justify an exception to Younger abstention.  See Spargo
v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 81 (2d
Cir. 2003).  Younger itself noted that "the existence of a
'chilling effect,' even in the area of First Amendment rights,"
is not "a sufficient basis, in and of itself, for prohibiting
state action."  Younger, 401 U.S. at 51.  Moreover, while
Jackson Hewitt argues that its RAL advertising constitutes

protected commercial speech, commercial speech in connection
with illegal or discriminatory conduct is not protected by the
First Amendment.  See Pittsburgh Press Co. v. Pittsburgh Comm'n
on Human Relations, 413 U.S. 376, 389 (1973); see also Cent.
Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557,
563-64 (1980).  Because Jackson Hewitt has presented no evidence
that the Division was motivated by a desire to restrict Jackson
Hewitt's constitutionally protected speech, the Younger
exception does not apply.

Finally, Jackson Hewitt argues that the Court should hear
its challenge to the Division's proceeding pursuant to the
"extraordinary circumstances" exception to the Younger doctrine.
The Court of Appeals for the Second Circuit has noted that there
are "two predicates for application of this exception: (1) that
there be no state remedy available to meaningfully, timely, and
adequately remedy the alleged constitutional violation; and
(2) that a finding be made that the litigant will suffer 'great
and immediate' harm if the federal court does not intervene."
Diamond "D" Constr., 282 F.3d at 201 (quoting Trainor v.
Hernandez, 431 U.S. 434, 442 (1977).  In this case, the state
courts remain open to Jackson Hewitt to appeal any decision by
the Division or to challenge any action taken by the Division.
Indeed, the New York State courts recently heard a challenge by
H & R Block Tax Services, Inc., to an administrative subpoena

issued by the Division in connection with its investigation of RALs.  See N.Y. State Div. of Human Rights v. H & R Block Tax Servs., Inc., 897 N.Y.S.2d 75 (App. Div. 2010).  Moreover, Jackson Hewitt has failed to show that immediate and irreparable harm will result if the Division's proceeding is not enjoined. While Jackson Hewitt claims that it intends to resume marketing RALs at some point in the future, it has currently suspended selling RALs.  (Birnbaum Aff. ¶¶ 37-39.)  Therefore, because state remedies are available to Jackson Hewitt and because there is no argument that Jackson Hewitt has suffered an immediate and irreparable injury from the Division's proceedings, this exception is not applicable.  See Diamond "D" Const., 282 F.3d at 201-02.

For all of these reasons, Younger abstention is appropriate in this case and no exception to the doctrine applies. Therefore, the Division's motion to dismiss is granted.

B

Because the Court has granted the defendant's motion to dismiss this case, Jackson Hewitt's motion for summary judgment seeking a declaratory judgment and a preliminary and permanent injunction against the Division is denied as moot.

CONCLUSION

16

For the reasons stated above, the defendant's motion to dismiss is **granted** and Jackson Hewitt's motion for summary judgment is **denied as moot**. Therefore, the Clerk is directed to enter judgment dismissing this action and closing this case.

**SO ORDERED.**

**Dated:  New York, New York**
        **August 25, 2010**

John G. Koeltl
United States District Judge

17